STATE OF NORTH CAROLINA v. ARNOLD PAUL BURLESON

No. 7529SC776

(Filed 18 February 1976)

1. Homicide § 21— motion for nonsuit — exculpatory statements intro-
   duced by State — other evidence of guilt

   The trial court in a prosecution for second degree murder prop-
   erly denied defendant's motion for nonsuit, though the State had
   offered into evidence certain exculpatory statements of defendant,
   since there was other plenary evidence that deceased died from a
   wound intentionally inflicted by defendant with a pistol.

2. Criminal Law § 75—defendant's statements to officers — voluntariness

   The trial court did not err in allowing into evidence statements
   made by defendant to police officers, since the court concluded that
   the statements were made knowingly and voluntarily.

3. Homicide § 24— intentional killing with deadly weapon — presumption
   — instructions proper

   The trial court in a second degree murder case did not err in
   instructing the jury on the presumption arising from the intentional
   killing with a deadly weapon, since that presumption was not invali-
   dated by Mullaney v. Wilbur, 421 U.S. 684.

4. Homicide § 24— absence of malice — burden of proof on defendant —
   instructions proper

   The trial court's instructions in a second degree murder case
   placing upon defendant the burden of satisfying the jury that malice
   was not present and thereby reducing the crime to manslaughter was
   not invalidated by the Mullaney decision, since the rules of that case
   apply only to trials conducted on or after 9 June 1975 and defendant
   was tried in April 1975.

APPEAL by defendant from Baley, Judge. Judgment entered
24 April 1975 in Superior Court, McDOWELL County. Heard in
the Court of Appeals 21 January 1976.

Defendant was charged in a bill of indictment with the
first degree murder of Walter Pruitt. The State elected to place
defendant on trial for second degree murder to which defendant
entered a plea of not guilty.

The evidence for the State tended to show the following: At
approximately 8:15 p.m. on 9 November 1974, Deputy Sheriff
Eddie Smith heard a shot from the direction of Johnson's Pav-
ing Company and saw the defendant drive a white Chevrolet
out of a dirt road near the paving company onto Highway 221.
He recognized the defendant and knew that he did not have an

operator's license. He switched on the blue light to his patrol car as he followed the defendant. Defendant pulled into Holly's Trailer Park, exited his car and ran. The officer apprehended the defendant and arrested him for operating a motor vehicle without an operator's license and driving under the influence of intoxicating liquor. After being arrested, the defendant told Officer Smith that he was seeking help for a man he had seen shot at Johnson's Paving Company. Officer Smith took the defendant to Johnson's Paving Company where he found the body of Walter Pruitt. Thereafter, defendant told Officer Smith and other officers that he had shot Pruitt with a pistol. Pruitt was coming toward him with a knife, but it was not open. The defendant further stated that they had been arguing all day and that he knew he was going to have "to kill him sooner or later." The defendant further stated that Pruitt was in the front seat of the car and he (the defendant) was in the rear seat. The defendant gave two other statements to the deputy, both of them saying that he and Pruitt had gotten into a scuffle and when Pruitt turned around reaching for his knife, the defendant shot him.

A .38 caliber pistol, with one spent cartridge and two or three live cartridges, was found in the Chevrolet owned by Walter Pruitt. No knife was found on or near the body of Pruitt.

An autopsy of the body of Walter Pruitt showed a penetrating wound on the right rear side of his head above the ear which extended into the brain causing massive brain damage and hemorrhage that resulted in his death. A fragmented bullet which had caused his death was removed from Pruitt's brain.

The bullet taken from the brain of Walter Pruitt was fired from the .38 caliber pistol found in the white Chevrolet automobile.

The jury found defendant guilty of second degree murder, and from judgment imposing a prison sentence, defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Archie W. Anders, for the State.*

*Davis and Kimel, by Horace M. Kimel, Jr., for defendant appellant.*

MARTIN, Judge.

[1]  Defendant assigns as error the denial of his motion for judgment as of nonsuit.

The evidence, inclusive of a portion of defendant's statement to Deputy Sheriff Smith, was sufficient to support a finding that defendant intentionally shot Pruitt and thereby inflicted a bullet wound which proximately caused Pruitt's death. If so, nothing else appearing, defendant would be guilty of murder in the second degree. See *State v. Bolin,* 281 N.C. 415, 189 S.E. 2d 235 (1972). Defendant contends that his statement to Deputy Sheriff Smith discloses that he acted within his legal right of self-defense; and, the statements having been offered in the State's evidence, the State is bound by the portions thereof which are favorable to defendant.

"On a motion for judgment as in case of nonsuit, the evidence must be considered in the light most favorable to the State. Contradictions and discrepancies, even in the State's evidence, are matters for the jury and do not warrant nonsuit. (Citations.)" *State v. Bolin, supra; State v. Carter,* 254 N.C. 475, 119 S.E. 2d 461 (1961).

" 'When the State introduces in evidence exculpatory statements of the defendant which are not contradicted or shown to be false by any other facts or circumstances in evidence, the State is bound by these statements.' (Citations.)" *State v. Bolin, supra.*

While the exculpatory statements of defendant introduced in State's evidence were competent to be considered on the motion to nonsuit, they may not be regarded as conclusive if there be other evidence tending to throw a different light on the circumstances of the homicide. *State v. Hankerson,* 26 N.C. App. 575, 217 S.E. 2d 9 (1975). The State was not bound by the exculpatory statements if other evidence offered pointed to a different conclusion and raised the reasonable inference from all the testimony that the shooting was intentional and unlawful. *State v. Hankerson, supra.*

There was plenary evidence that deceased died from a wound intentionally inflicted by defendant with a pistol, thus creating the presumption that the killing was unlawful and that it was done with malice. Upon the jury finding that deceased died from a wound intentionally inflicted by defendant with a

pistol, it became incumbent upon defendant to satisfy the jury that the killing was justified on the ground of self-defense. The facts stated in defendant's statements to Deputy Sheriff Smith are insufficient to show as a matter of law that defendant was entitled to exoneration on the ground of self-defense. Considered in the light most favorable to defendant, these facts were sufficient only to permit the jury to find to its satisfaction that defendant so acted. In any event, when the testimony of Eddie Smith, Dr. John Reese, Ernestine Lewis, Steve Dalton, Barry Bailey, Frank Satterfield, and Mrs. Walter Pruitt is considered, the court properly denied defendant's motion for judgment as in case of nonsuit.

[2]  Defendant next assigns error to the admission into evidence of statements which defendant made to Officer Eddie Smith, Deputy Sheriff Steve Dalton and Officer Harry Trinks on two separate occasions.

After conducting a voir dire hearing, the trial court concluded as follows:

"1. That there was no offer or hope of reward or inducement on the part of the State or anyone to the defendant to make a statement;

2. That there was no threat or suggested violence or show of violence to persuade or induce the defendant to make any statement;

3. That any statement made by the defendant to Officers Eddie Smith, Lt. Dalton and Chief Deputy Trinks or any or all of them upon November 9, 1974, and again on the morning of November 10, 1974 were made voluntarily, knowingly and independently;

4. That the defendant was in full understanding of his constitutional rights to remain silent and his rights to counsel and all other rights at the time of the interrogation on November 9th and the statements made at that time and on November 10th when he signed the written statement;

5. That he purposefully, freely, knowingly and voluntarily waived each of those rights and thereupon made a statement to the officers, above mentioned.

THE COURT, THEREFORE, Upon these findings of fact and conclusions of law determined that any statement made

by the defendant, Arnold Paul Burleson on November 9 and November 10, 1974, in accordance with the above findings of fact and conclusions of law is admissible in evidence and that the motion to suppress this statement or statements under the totality of all the circumstances involved is DENIED."

The record reveals there was ample evidence to support the findings of fact, and the findings of fact, in turn, supported the court's conclusions. This assignment of error is overruled.

[3, 4] The defendant finally contends that, in light of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed. 2d 508 (1975), the trial court erred in its instructions to the jury regarding the presumption arising from the intentional killing with a deadly weapon and the burden being placed upon the defendant to "satisfy the jury" that malice was not present and thereby reduce the crime to manslaughter. The trial judge's instructions were in accord with the well settled law in the State of North Carolina at the time of the trial with regard to the burden of proof as to the presumption arising from the intentional killing with a deadly weapon and the burden of proof on self-defense.

The instant case was tried during the week of 24 April 1975. The *Mullaney* opinion was not announced until 9 July 1975. In *State v. Hankerson,* 288 N.C. 632, 220 S.E. 2d 575 (1975), tried at the 21 November 1974 Session of Nash County Superior Court, the Supreme Court of this State, affirming the opinion of this Court reported in 26 N.C. App. 575, 217 S.E. 2d 9 (1975), refused to give *Mullaney* retroactive effect in North Carolina and held that the defendant is not entitled to the benefit of the *Mullaney* doctrine. The Court held, however, that the *Mullaney* decision would be applied to all trials conducted on or after 9 June 1975. For the reasons set forth, this assignment of error is overruled.

The defendant had a fair trial free of prejudicial error.

No error.

Judges VAUGHN and CLARK concur.